**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STEPHANIE C. ARTIS,

     Plaintiff,

         v.                        Civil Action No. 11-2241 (JEB)

DISTRICT OF COLUMBIA,

     Defendant.

## MEMORANDUM OPINION

Plaintiff Stephanie Artis worked at the District of Columbia's Department of Housing from 2007 to 2010. After the Department declined to renew her appointment, Artis sued, claiming that she had been mistreated by her supervisor on account of her gender and fired in retaliation for having filed complaints about misconduct in the office. The District has now moved for judgment on the pleadings, or, in the alternative, for summary judgment.

The Court finds, based on the evidence in the record, that no reasonable jury could conclude that Artis was subjected to gender discrimination while employed by the District. Because such discrimination is Artis's only federal claim, moreover, the dismissal of that count divests this Court of subject-matter jurisdiction. The Court will therefore grant the District's Motion and dismiss this case in full, leaving Artis to refile her remaining state-law claims in the appropriate local court, should she so choose.

## I.    Background

Artis's Complaint lists four causes of action against the District: (1) Employment discrimination on the basis of gender in violation of Title VII of the Civil Rights Act of 1964; (2) Termination in violation of the D.C. False Claims Act; (3) Retaliation in violation of the D.C.

Whistle Blower Act; and (4) Wrongful discharge. <u>See</u> Compl., ¶¶ 28-49. [1] Because the Court

need only address Artis's first claim – her sole federal cause of action – in order to dispose of

this case, it will limit its recitation of the facts to those connected with that count. The Court,

moreover, considers such facts in the light most favorable to Plaintiff. <u>Anderson v. Liberty

Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

In August 2007, Artis was appointed as a Code Enforcement Inspector by the D.C.

Department of Housing. <u>See</u> Mot., Exh. 1 (Notice of Termination) at 1. She served in that

position until December 2010. <u>See id.</u> Her supervisor was Gerard Brown. <u>See</u> Def. Statement

of Undisputed Facts (SUF), ¶ 2. Artis and Brown had a tense relationship, and, during her

tenure, Artis reported to senior Department officials and the D.C. Office of the Inspector General

several instances where Brown was hostile, threatening, or unfair to her. <u>See</u> Opp., Exh. 3

(FOIA Request, OIG Investigation); <u>id.</u>, Exh. 5 (Step 3 Grievance). When Artis's term as a

Code Enforcement Inspector ended in November 2010, her appointment was not renewed. <u>See</u>

Def. SUF, ¶ 6. Following her termination, Artis filed this lawsuit against the District, claiming

that she had been subjected to both gender discrimination and retaliation for reporting the

allegedly unlawful activities of her supervisor.

Artis's Complaint lists two aspects of her employment that, she says, constituted

unlawful gender discrimination in violation of Title VII. The first is that Brown purportedly

refused to meet with her personally to go over her mid-year and annual evaluations, while he did

meet personally with her male coworkers. <u>See</u> Compl., ¶ 33. Artis affirmed the truth of this

allegation in her deposition. <u>See</u> Mot., Exh. 7 (Deposition of Stephanie C. Artis) at 106-07. The

District disputes this assertion, contending that the only reason Brown did not meet personally

---

[1] There is some discrepancy in Artis's Complaint. Its introduction refers to five causes of action (the fifth being a state-law claim for intentional infliction of emotional distress), but the document itself goes on to describe only four.

with Artis about her 2010 annual evaluation was that, by the time the evaluation occurred, she was no longer employed at the Department.  See Notice of Termination at 1; Mot., Exh. 2 (Brown/Artis Email Exchange of October 12, 2010) at 1.  But that excuse only works for the single evaluation that came at the end of Artis's term.  It does not explain why Brown failed to meet with her for the evaluations that occurred earlier in her time at the Department.

The second discriminatory action alleged in the Complaint is that Brown would only allow male employees to attend the employee-development training classes he instructed.  See Compl., ¶ 32.  Once again, the District claims that the evidence in the record negates this charge, noting that Artis admitted to attending several development training classes and that her signature appears on the sign-in sheets for at least three of them.  See Artis Depo. at 105-06; Mot., Exhs. 3-5 (Sign-In Sheets).  Once again, however, the story is not so simple.  One of the sign-in sheets bearing Artis's name indicates that the class was taught by someone other than Brown, and the two other sheets do not indicate the identity of the instructor at all.  See id. Although Artis admitted attending some classes, moreover, she never specifically admitted to attending the ones taught by Brown.  A look at her deposition transcript makes this clear:

> Q      I would like to draw your attention to page 6 of your
> Complaint, paragraph 32.  You state, "Gerard Brown would only
> allow male employees to attend the Employee Development
> Training Classes he instructed."  Is your testimony today that
> is a true statement?
> A      With regard to the rodent control division, to the best of my
> recollection, yes, ma'am. . . . .
> Q      Do you know for a fact whether women attended the
> development training classes?
> A      Yes, ma'am.
> Q      So you know that women did attend those?
> A      Yes, ma'am.
> Q      And you attended some of those trainings, correct?
> A      Yes, ma'am.

Artis Depo. at 105-06.

The District would have the Court read this testimony as internally contradictory – Artis affirms her allegation that Brown would not let women attend his training classes, but then concedes that she attended those very same events. While that is one possible reading of the transcript, it is not the only one. Artis could also be understood to have meant that Brown would not let women attend <u>his</u> training classes, but that she was able to attend classes taught by <u>other</u> instructors. As the Court will treat the District's Motion as one for summary judgment, it is bound to take the facts in favor of Artis, <u>see</u> <u>Liberty Lobby</u>, 477 U.S. at 255, which means it must adopt the latter interpretation of her testimony.

## II. Legal Standard

The District has filed a Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment. Because in order to dispose of this case, the Court must consider material outside the four corners of the Complaint, it will resolve the case under the summary-judgment standard.

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Liberty Lobby</u>, 477 U.S. at 247-48; <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 248; <u>Holcomb</u>, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Liberty Lobby</u>, 477 U.S. at 248; <u>Holcomb</u>, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing

that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, 477 U.S. at 249-50.

## III.  Analysis

As mentioned earlier, Artis's sole federal cause of action is a Title VII claim alleging that she was subjected to gender discrimination while employed at the D.C. Department of Housing. Because, for the reasons explained below, the undisputed facts in the record do not support such a claim, the Court will grant summary judgment in favor of the District on this count. Once Artis's Title VII count has been dismissed, moreover, she no longer has a basis for federal jurisdiction over her remaining state-law counts. The Court will therefore dismiss those claims without prejudice for lack of subject-matter jurisdiction.

A.  Title VII Claim

To state a *prima facie* claim of discrimination under Title VII, Artis must establish three things: (1) She is a member of a protected class, (2) She suffered an adverse employment action, and (3) The unfavorable action gives rise to an inference of discrimination.  Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002).  While the District concedes that Artis is a member of a protected class by virtue of her gender, it contends that she cannot show that she suffered an adverse action that would give rise to an inference of discrimination.  If that is true, she would, accordingly, be unable to establish the second and third elements of a Title VII claim.

An employee suffers an adverse action if she "experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." Czekalski v. LaHood, 589 F.3d 449, 454 (D.C.Cir. 2009) (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002)).  Tangible harm means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  Title VII is not a "general civility code," however.  Faragher v. Boca Raton, 524 U.S. 775, 788 (1998).  "Purely subjective injuries, such as dissatisfaction with a reassignment, or public humiliation or loss of reputation, are not adverse actions." Forkkio, 306 F.3d at 1130-31.  Nor are "petty slights, minor annoyances, [or] simple lack of good manners."  Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006). "The federal courts cannot be wheeled into action for every workplace slight."  Taylor v. FDIC, 132 F.3d 753, 765 (D.C. Cir. 1997).

To recap, Artis's Complaint cites two actions that Brown took against her, purportedly on account of her gender: First, refusing to meet with her in person to go over her mid-year and annual evaluations, and, second, prohibiting her from attending the development training classes that he taught. As already explained, the factual record, construed in the light most favorable to Artis, seems to support both of these allegations. Neither charge, however, rises to the level of an "adverse action" under the law of this Circuit. The Complaint does not allege, moreover, that Artis's termination constituted gender discrimination.

Brown's refusal to review Artis's evaluations with her in person is clearly not an actionable claim. Indeed, this is just the kind of "petty slight" that the Civil Rights Act does not cover. Id. Artis still received her performance evaluations, and she does not allege a deprecation of her work; instead, she was simply denied a personal review of those evaluations from her supervisor. While perhaps displeasing, no reasonable jury could believe that Artis's inability to meet personally with Brown worked any tangible harm to her employment status – on par with being fired, denied a promotion, or reassigned. Artis does not allege, furthermore, that Brown's failure to meet with her somehow materially affected her professional development or her ability to perform her duties. There is no Title VII claim here.

Brown's refusal to permit Artis to attend the training development classes he taught, however, is a slightly more complicated story. The Court of Appeals has not specifically addressed this issue, but the overwhelming consensus on the District Court seems to be that the denial of training opportunities may constitute an adverse action only if the plaintiff can link that denial to a tangible, negative employment consequence. See, e.g., Morales v. Gotbaum, 2014 WL 2031244, at *6, 15-16 (D.D.C. May 19, 2014); Sims v. District of Columbia, 2014 WL 487062, at *8 (D.D.C. Feb. 6, 2014); Warner v. Vance-Cooks, 956 F. Supp. 2d 129, 171 (D.D.C.

2013); <u>Casey v. Mabus</u>, 878 F. Supp. 2d 175, 184 (D.D.C. 2012); <u>Brooks v. Clinton</u>, 841 F.

Supp. 2d 287, 301 (D.D.C. 2012); <u>Allen v. Napolitano</u>, 774 F. Supp. 2d 186, 203-04 (D.D.C.

2011); <u>Dorns v. Geithner</u>, 692 F. Supp. 2d 119, 133 (D.D.C. 2010).  The Court agrees.  The loss

of training opportunities, on its own, does not "objectively [and] tangibl[y] harm" a plaintiff,

<u>Czekalski</u>, 589 F.3d at 454, unless the classes would have had some material impact on the

plaintiff's career.  Here, Artis not only fails to connect her inability to attend Brown's training

classes to any tangible, negative employment consequence, but she also admits that she was able

to attend several other classes, taught by other instructors.  Her allegation therefore falls short of

what is required under Title VII.

  Artis fails to address these arguments.  Instead, she simply offers in her Opposition brief

a new series of allegations of gender discrimination, including that Brown "arbitrarily created

requirements and rules that were disproportionately applied to [her] as compared to similarly

situated male Code Enforcement Inspectors," and that she was ultimately terminated on account

of her gender.  Opp. at 11-15.  Such arguments, of course, may not be raised for the first time in

an opposition pleading, <u>see</u> <u>Flynn v. Veazey Const. Corp.</u>, 310 F. Supp. 2d 186, 189 (D.D.C.

2004) (collecting cases), and since Artis is represented by counsel, she is not entitled to the

leeway that might otherwise be afforded to a *pro se* plaintiff.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S.

89, 94 (2007).  This is particularly so where this count in her Complaint makes very specific

reference to only the two discriminatory actions discussed above.  Even if the Court were to

consider the belated termination argument, moreover, it contradicts the rest of Artis's Complaint,

which plainly describes the <u>sole</u> motive for her termination as retaliation for the grievances she

filed against Brown.  <u>See</u> Compl., ¶ 38 ("Defendants illegally terminated Plaintiff based upon

Plaintiff's exercise of a protected activity under the [D.C. False Claims Act]."); <u>id.</u>, ¶ 43 ("As a

direct result of Plaintiff's protected disclosures, Defendants gradually, and continuously, retaliated against Plaintiff, including but not limited to written reprimands of Plaintiff, isolation, and ultimately termination."); see also id., ¶¶ 47-48. The Court notes, furthermore, that Artis has brought her retaliation claims only under local D.C. law, not under Title VII.

Because neither allegation in Artis's Complaint rises to the level of an "adverse action" that could support a claim for gender discrimination under Title VII of the Civil Rights Act, the Court will grant the District's Motion on this count.

B. Supplemental Jurisdiction

Without Artis's Title VII claim, this Court lacks subject-matter jurisdiction over her remaining state-law claims and will decline to exercise supplemental jurisdiction. Federal district courts are given supplemental (or "pendent") jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "[p]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)). When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider "judicial economy, convenience, fairness, and comity." Id. at 424. When all federal claims are eliminated before trial, however, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction

over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in Carnegie-Mellon "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

Here, the factors weigh against retention of the case. The Court is dismissing Artis's only federal claim. The case has not progressed in federal court past the District's Motion, and the Court has developed no familiarity with the issues presented. Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case). There is thus no undue inconvenience or unfairness to the litigants that would result from such a decision. Finally, Artis will not be prejudiced because 28 U.S.C. § 1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter. See Shekoyan, 409 F.3d at 419 (affirming district court finding that because of this tolling, dismissal of pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system") (citation omitted). The Court, therefore, will dismiss the D.C. False Claims Act, D.C. Whistle Blower Act, and wrongful discharge claims without prejudice, and Artis may bring such claims, if not barred, in the appropriate local court.

**IV.     Conclusion**

For the foregoing reasons, the Court will issue a contemporaneous Order that will grant in full the District's Motion for Summary Judgment.  The Court will dismiss Artis's Title VII claim with prejudice and her remaining claims without prejudice.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 27, 2014